## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

**Breaux et al**  Case No. 2:20-Cv-00168

**Versus**  **District Judge James D Cain Jr**

**HomeFirst Agency Inc et al**  **Magistrate Judge Carol B Whitehurst**

## REPORT AND RECOMMENDATION

Before the Court upon referral from the district judge, is a Motion To Remand filed by Plaintiffs, Dylan Ray Breaux and Hanna Breaux, [Rec. Doc. 8] and Defendant, HomeFirst Agency Inc.'s ("HomeFirst"), Opposition thereto [Rec. Doc. 10]. For the reasons that follow, the Court recommends that the Motion be denied.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this action on December 11, 2019, in the Thirty-first Judicial District Court, Parish of Jefferson Davis, Louisiana against HomeFirst, as well as Derek Laviolette, Ob Morgan and Patrick Kasson (sometimes referred to collectively as "Louisiana Defendants"). *R. 1-3*. HomeFirst removed the case to this Court on February 6, 2020 based on diversity of citizenship grounds. 28 U.S.C. §§ 1332, 1441. Plaintiffs allege claims against HomeFirst for "arbitrary, bad faith denial of [insurance] coverage," and claims against the Louisiana Defendants alleging they formed a "joint venture" to sell Plaintiffs a manufactured home with redhibitory

defects for $97,789.76. They seek the return or reduction of the purchase price, damages, attorney's fees and other relief.

The record provides that Plaintiffs purchased a manufactured home ("the manufactured home") from CMH Homes, Inc., doing business as Clayton Homes Lake Charles and Clayton Homes #262, in Lake Charles, Louisiana ("CMH"). *R. 10, p.2.* At that time, the Louisiana Defendants, Laviolette, Morgan and Kasson, were the General Manager, Sales Manager and Service Manager, respectively, of CMH. *Id.* Plaintiff sued HomeFirst for breach of its contract in failing to provide coverage under their "insurance policy" for their "mobile home vices, defects, acts and/or omissions." *R. 1-3, ¶25.* As to the Louisiana Defendants, Plaintiffs alleged that Laviolette, Morgan and Kasson "formed a joint venture that sold them a manufactured home with redhibitory defects for $97,789.76." *R. 1-3, ¶¶ 6, 12*.

The parties do not contest that Plaintiffs and Louisiana Defendants are citizens of Louisiana. HomeFirst argues, however, that Kasson, Morgan and Laviolette were added to the lawsuit solely to defeat diversity jurisdiction and not because any plausible claim exists against them. Plaintiffs filed the instant motion to remand on April 23, 2018. *R. 8.* HomeFirst filed a memorandum in opposition on March 9, 2020. *R. 10.* On July 29, 2020, this case was referred the undersigned. *R. 11, Order of Recusal.*

2

## II. LAW AND ANALYSIS

A. Diversity Jurisdiction

Initially, the Court must address Plaintiffs' contention that this Court lacks subject matter jurisdiction under 28 U.S.C. § 1332 regardless of improper joinder because the amount in controversy in this case is not more than $75,000. *R. 8-1, p. 21*. A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)-(a)(1). Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint. *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed"). The removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand. *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007). The removing party has the burden of proving federal diversity jurisdiction. *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003). Remand is proper if at any time the court lacks subject matter jurisdiction. See, 28 U.S.C. § 1447(c).

HomeFirst argues that Plaintiffs allege claims for state law redhibition and bad faith, contending they are entitled to return of the $97,789.76 purchase price plus bad faith penalties and attorney's fees because the policy they purchased from HomeFirst provided coverage for the alleged defects. While interest and costs may not be used to calculate the amount in controversy under 28 U.S.C. § 1332, attorneys' fees are includable in the amount in controversy determination only if they are provided for in the statutory cause of action. *H&D Tire and Automotive-Hardware, Inc. v. Pitney*, 227 F.3d 326, 330 (5th Cir. 2000). Under Louisiana's law of redhibition, a seller is liable to the buyer for reasonable attorney's fees only if the seller knew of the defect, La. Civ. C. art. 2545. Here, Plaintiffs allege that the Louisiana Defendants formed a Joint Venture to sell the manufactured home and had knowledge of the home's alleged defects.[1]

As provided in the pleadings and considering Plaintiffs' claims for attorney fees against all defendants, the Court may include the purchase price and attorney's fees in the calculation of the amount in controversy. Accordingly, the amount in controversy is above the $75,000 threshold. Thus, diversity jurisdiction exists as to jurisdictional amount. The Court must therefore determine whether or not the

---

[1] Plaintiffs allege the manufactured home had 35 "interior vices and defects." *R. 1-3, ¶ 18.*

4

Louisiana Defendants are improperly joined to defeat complete diversity jurisdiction.[2]

B. Standard of Law - Improper Joinder

The improper joinder doctrine is a narrow exception to the complete diversity rule. *McDonald v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005). "The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper." *Smallwood v. Illinois Cent. R.R.*, 385 F.3d 568, 574 (5th Cir. 2004) (*enbanc*). To establish improper joinder, the party seeking removal must show either: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the nondiverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003). Under the second test, applicable in this case, the removing party must show "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573.

In order to assess a plaintiff's possibility of recovery against the non-diverse defendants, the court conducts "a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether [it] states a claim under state law

---

[2] The Court need not address Plaintiffs' contention that HomeFirst improperly removed this action because the Louisiana Defendants did not consent to removal. Consent for removal is not required from defendants that are improperly joined as it would be "nonsensical." *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir.1993). As the Court finds that the Louisiana Defendants were improperly joined, *infra.*, it is not necessary to address HomeFirst's contention that the Louisiana Defendants were not properly served.

against the in-state defendant." *Id*. This inquiry "depends upon and is tied to the factual fit between the plaintiffs' allegations and the pleaded theory of recovery." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999). "Ordinarily if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Smallwood*, 385 F.3d at 573.

In some cases, however, the analysis should advance past the standards of Rule 12(b)(6). *Id*. This is appropriate where the plaintiff "has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* Although the decision regarding the procedure necessary in a given case lies within the discretion of the district court, the Fifth Circuit has cautioned that, "[A] summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id*. at 573-74. The Fifth Circuit further advised that, "[T]he inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *Id*. at 574.

Here, both Plaintiffs and the Louisiana Defendants attach summary-judgment type evidence (declarations and exhibits) regarding information related to Plaintiffs' recovery against the Louisiana Defendants that is not contained in the Plaintiffs' pleadings. As the Court finds that Plaintiffs' pleadings omit "discrete and undisputed

facts that would determine the propriety of joinder," the Court will use its discretion to pierce the pleadings and conduct a summary inquiry in this case. The Court determines that such inquiry is necessary to determine whether joinder was proper. *See Craig Penfold Properties, Inc. v. Travelers Cas. Ins. Co.*, 2014 WL 4055356, at *5 (N.D.Tex.,2014).

When conducting a summary inquiry, the Court (1) determines only whether the plaintiff may possibly recover against a non-diverse defendant, *Cumpian v. Alcoa World Alumina, L.L.C.,* 910 F.3d 216, 219 (5th Cir. 2018), and (2) resolves all "contested issues of fact" in the plaintiff's favor. *Travis v. Irby*, 326 F.3d 644, 648–49 (5th Cir. 2003).

C. Plaintiffs' Claims Against the Louisiana Defendants

1. *Redhibition*

Plaintiffs contend that the Louisiana Defendants are liable under redhibition for return or reduction of the purchase price, damages and attorney's fees as the seller of the manufactured home. They allege that the Louisiana Defendants "refused and/or failed to correct problems with the [manufactured home]" even though Plaintiffs' complained; and that they "knew of the redhibitory vices and defects before the sale of the [manufactured home], yet each remained silent." *Id. at ¶¶ 14, 15, 16*.

7

Only a seller or manufacturer of a product can be liable to a buyer for the remedies available under Louisiana's redhibition laws. La. Civ. Code arts. 2520, *et seq.*; *Fuller v. CMH Homes, Inc.*, 2013 WL 2524429 (W.D. La. 2013); *Ahrens v. TPLC, Inc.*, 955 F.Supp. 54 (E.D. La. 1997); *Nettles v. ING N. Am. Ins. Corp.*, 2005 WL 8155668, at *9 (M.D. La. 2005). Plaintiffs allege that the Louisiana Defendants were doing business as a "Joint Venture" when they sold the manufactured home to Plaintiffs. *R. 1-3, ¶ 7.* [3] They each attach identical declarations which state that the Louisiana Defendants never told Plaintiffs that they worked for "CMH Homes," "any other company" or "HomeFirst." *R. 8-4, ¶¶ 9, 10, 12; 8-4, ¶¶ 9, 10, 12*. Each states, "It was my understanding that we were purchasing the mobile home directly from Morgan, Kasson and Laviolette." *R. 8-4, ¶ 11; 8-4, ¶ 11*.

In its Opposition, HomeFirst attaches the Louisiana Defendants' individual declarations as well as documents involved in the purchase of the manufactured home which establish that Morgan, Kasson and Laviolette were not the sellers or manufacturers, but rather were employees of CMH. Each of the Louisiana Defendants represents, *inter alia*, that he (1) never owned the manufactured home Plaintiffs purchased; (2) was never owner of any business that owned the manufactured home; and (3) has never participated in any joint venture that owned

---

[3] Plaintiffs' allege "the Joint Venture was in the business of buying, selling servicing, insuring and moving mobile homes." *Id.*

8

or sold the manufactured home. *R. 10-2, ¶¶ 14-15; 10-4, ¶¶ 6-7; 10-5; ¶¶ 7-9*. Each denies participation in any joint venture to sell, service, insure or move any manufactured home for profit. *R. 10-2, ¶, 10-4, ¶, 10-5, ¶ 7*. Laviolette and Morgan represent that all of the pre-purchase activities related to the manufactured home in which they were involved occurred on the business premises of CMH's Lake Charles Home Center. *R. 10-2, ¶ 5; R. 10-4, ¶ 4*. The same record shows a photograph of the signage at the Home Center site which clearly states "Clayton Homes." *Id.*

HomeFirst also attaches the documents and paperwork involved in Plaintiffs' order, purchase and payment related to the manufactured home. *R. 10-3*. The documents are executed by the Plaintiffs and provide that the seller/retailer is "CMH Homes, Inc." and/or "Clayton Homes Lake Charles, LA.." *Id.* Specifically, (1) a May 8, 2017 personal check for $1000.00 is executed by Hannah Breaux and made out to "Clayton Homes." *Id. p. 2*; (2) the August 10, 2017 Sales Agreement indicating "Make: CMH," "Seller: Clayton Homes" and "Sales Person Full Name: Ob Morgan" is executed by both Plaintiffs. *Id. at pp. 4, 5;* (3) the July 28, 2017 Retailer Closing Agreement executed by both Plaintiffs states "Retailer CMH Homes, Inc. DBA Clayton Homes." *Id. at pp. 6-9;* (4) the July 28, 2017 Binding Dispute Resolution Agreement executed by both Plaintiffs states "Seller Clayton Homes." *Id. at pp. 10-13*; and (5) the loan check issued by Plaintiffs' financial institution holding their mortgage, Jeff Davis Bank, was made payable to "CMH

9

Homes, Inc." *Id., at pp. 15-16*. Finally, Plaintiffs executed a Power of Attorney (Sale) appointing "CMG Homes Inc." "to transfer ownership, sign title documents, apply for a duplicate title, secure insurance, record liens, make application for licensing and registration and to perform any and all acts necessary relative to the ownership of the above home." *Id. at p 17*.

The foregoing evidence disputes the Plaintiffs' allegations and declarations representing to the Court that they believed or were misled to believe that they were purchasing the manufactured home directly from Morgan, Kasson and Laviolette. Accordingly, the Court finds that Plaintiffs have failed to allege a redhibition claim against the Louisiana Defendants.

*2. Warranties*

Plaintiffs allege they have a cause of action against the Louisiana Defendants related to warranties covering the manufactured home. They represent in their Declarations that the Louisiana Defendants "promised" them that "any problems" with the home would be covered by the manufacturer's warranty for the first year and thereafter by the manufacturer's extended warranty. *R. 8-4 ¶¶ 6, 7, 1,7 21; R. 8-5, ¶¶ 6, 7, 17, 21*. They state that after purchasing the home, they requested that the Louisiana Defendants correct problems which were supposed to be covered by the warranty and extended warranty, but the Louisiana Defendants failed to remedy the problems and the warranties did not cover them. *Id. at ¶¶18, 19, 25*.

10

HomeFirst argues that the New Manufactured and Modular Home Warranty Act ("NMMHWA"), La. R.S. 51:912.1, *et seq*., provides the exclusive warranties and remedies for redhibitory defects in a manufactured home against "builders."[4] "and no other provisions of law relative to warranties and redhibitory vices and defects shall apply." La. R.S. 51:912.10; *see also Dodge v. White's Mobile Homes, Inc.*, 299 So.3d 177, 179 (La.App. 3 Cir., 2020). HomeFirst states that the identical exclusivity language in the NMMHWA was also used by the Louisiana Legislature in the NHWA, La. R.S. 9:3141.[5] As such, HomeFirst cites G*ines v. D.R. Horton, Inc.*, in which the court held that the exclusivity language of the NHWA bars claims for negligence and implied warranty. *Id.*, 2011 WL 3236097, *2-3 (M.D. La. 2011) (the exclusivity language in NHWA "precluded claims against the builder ... [for ] breach of contract, poor workmanship, and negligence."). *See also Barnett v. Watkins*, 970 So.2d 1028, 1038 (La. App. 1 Cir.,2007)( for claims arising from faulty and defective construction of the home, the NHWA "is an exclusive remedy and [] all other theories of recovery are excluded."); *Sowers v. Dixie Shell Homes of Am. Inc.*, 762 So.2d 186, 188-89 (La. App. 2d Cir. 2000) ("for defects arising from the

---

[4] The NMMHWA defines a "builder" as "a person or an entity that designs, manufactures, or constructs homes, including dealers, developers, manufacturers, and installers...." LA R.S. 51:912.3 Definitions.

[5] The Court has determined that there is a dearth of jurisprudence addressing the NNMHWA. Apparently, because of this deficiency, FirstHome relies on jurisprudence relative to the new Home Warranty Act ("NHWA"), La. R.S. 9:3141, *et al*, which contains language verbatims to the NNMHWA. C*omparing* § 51:912.1 - § 51:912.10 to § 3141 - § 3150.

11

poor workmanship in the construction of their home, . . . the NHWA is, indeed, the owner's exclusive remedy against the builder").

HomeFirst further asserts that Plaintiffs have not met the notice conditions required before instituting any action under the NMMHWA. The NMMHWA requires that the owner must give the Louisiana Manufactured Housing Commission ("LMHC") notice of all defects in their manufactured home. La. R.S 51:912.5(A). The notice must be sent in writing on the LMHC's consumer complaint form by registered or certified mail <u>within one year of the owner's knowledge of the defects</u>. *Id*. Upon receipt of the written notice form, the LMHC makes a determination on all defects and gives the builder a reasonable opportunity to make the repairs. *Id*. Thereafter, the LMHC determines if the repairs are in compliance with building standards. *Id*.

Based on the foregoing, because the Louisiana Defendants are not the "builder" of the manufactured home as required under the NMMHWA, Plaintiffs have no claim for warranties against them. As such, Plaintiffs have failed to state a cause of action against the Louisiana Defendants related to warranties covering the manufactured home.

*3. Insurance*

Plaintiffs allege that Laviolette was an agent for HomeFirst Agency and intentionally misrepresented the coverage issued under their insurance policy.

Plaintiffs fail to allege, however, what specific misrepresentation Laviolette made about their insurance coverage and how they were damaged by any such misrepresentation. In his declaration, Laviolette admits that he has a producer's license and affiliation with HomeFirst and that he assisted Plaintiffs "in selecting and procuring homeowner's insurance through HomeFirst that would satisfy the requirements of the lender and financing." He denies, however, that he "ever promised, assured or assisted" Plaintiffs with procuring insurance "that would cover everything not covered by the warranty on their manufactured home." *R. 10-2, p. 11*. He states that Plaintiffs never contacted him about the insurance after it was issued. *Id., ¶ 12*.

The declaration of Andy Bruner, HomeFirst Agency's Vice President of Claims and Compliance, states that Plaintiffs purchased insurance coverage for the policy period July 26, 2017 to July 26, 2018, from American Bankers Insurance Company of Florida ("American Bankers"), through HomeFirst. *Id., ¶¶ 3,4*. Plaintiffs renewed the insurance, unchanged, for the policy periods August 1, 2018 to August 1, 2019 and August 1, 2019 to August 1, 2020. *Id. at ¶¶ 6, 7*. HomeFirst has never received any claim or request for insurance benefits or coverage from Plaintiffs. *Id. at ¶ 8*. Instead, HomeFirst states that Plaintiffs have made three claims for benefits under the 5-year Home Service Contract they purchased through HomeFirst. *Id. at ¶¶ 9, 10, 11*. As acknowledged by Laviolette, the Service Contract

13

is not an insurance contract that would require a licensed HomeFirst agent to sell. *R. 10-2, ¶ 13.*

Based on the declarations of Laviolette and HomeFirst's Vice President, Bruner, Plaintiffs have no cause of action against the Louisiana Defendants for misrepresentations related to their insurance coverage for which they have never made a claim.

### *4. Negligence*

Plaintiffs allege that each of the Louisiana Defendants breached personal duties owed to them and are therefore personally liable for negligence under Louisiana law. In particular, they allege that Morgan "intentionally misrepresented the quality, workmanship and warranties of the manufactured home;" Kasson "intentionally misrepresented the servicing on the manufactured home;" and Lavolette "intentionally misrepresented the nature and coverage provided by the HomeFirst policy." *R. 1-3, ¶¶ 8, 9, 11.* Also in their complaint Plaintiffs list 35 "interior vices and defects" in their manufactured home, *Id. at ¶ 18,* and allege the Louisiana Defendants "knew of the redhibitory vices and defects before the sale… yet each remained silent." *Id. at ¶16.* In their declarations, however, Plaintiffs make merely general statements that the Louisiana Defendants gave them false "assurances" and mislead them about repairs of the manufactured home, the manufacturer's warranties and the insurance coverage they purchased. *R. 8-4, 8-5.*

14

In their individual declarations, the Louisiana Defendants deny all of Plaintiffs' accusations. *R. 10-2, 10-4, 10-5.*

As the Court has addressed Plaintiffs' contentions related to the manufactured home's warranties and insurance and found that the Louisiana Defendants owed no duties related to the performance of the warranties and insurance, the Court will address Plaintiffs' claims of negligent misrepresentation against the Louisiana Defendants.

Under Louisiana tort law, an employee is personally liable to a third person if the employee breached a personal duty owed to that person. *Freeman v. Wal-Mart Stores, Inc.*, 775 F.Supp. 208, 210 (W.D. La. 1991). Courts look to the factors set forth by the Louisiana Supreme Court in *Canter v. Koehring Co.*, 283 So.2d 716 (La. 1973), to determine if there is a basis for an employee's personal liability. *Id.* Under Canter, personal liability may be imposed on an employee-defendant only if:

(1) the employee-defendant's employer owed a duty of care to the plaintiff, a breach of which caused plaintiff's injuries;

(2) the employer's duty to the plaintiff was delegated to the particular employee-defendant, and;

(3) a breach of the duty of care owed to plaintiff was caused by the employee-defendant's own personal fault.

*See Canter*, 283 So.2d at 721 (superseded by statute on other grounds as stated in *Walls v. Am. Optical Corp.*, 740 So.2d 1262, 1265 (La. 1999)). Notably, personal liability cannot be imposed on an employee based on general administrative

responsibilities; rather the employee must have a personal duty to the plaintiff that was not properly delegated to another employee. *Id*. "If the [employee-]defendant's general responsibility has been delegated with due care to some responsible subordinate or subordinates, he is not himself personally at fault and liable for the negligent performance of this responsibility unless he personally knows or personally should know of its non-performance or mal-performance and has nevertheless failed to cure the risk of harm." *Id.*

FirstHome argues that Plaintiffs have produced no documents in support of their claims that the Louisiana Defendants personally obligated themselves to Plaintiffs. FirstHome cites the August 10, 2017 Sales Agreement executed by Plaintiffs, *R. 10-3, p. 5,* which is contrary to Plaintiffs' unsupported allegations. The Sales Agreement states in pertinent part,

> Buyer acknowledges that <u>neither Seller nor any of its agents have made any oral representations concerning the quality or character of the home or Its contents</u>. All representations concerning the quality and character of the home are stated in this Sales Agreement, including any addenda, and the Retailer Closing Agreement. (emphasis added).
>
> . . . [which] establish the complete agreement between Buyer and Seller and there are no other agreements or understandings between the parties hereto. This Sales Agreement supersedes any prior, signed Sales Agreements, and may only be modified by written agreement of the parties hereto.

*Id. at ¶¶ 10, 11.* As asserted by FirstHome, the foregoing language constitutes an integration merger clause which cannot be disputed. "An integration or merger

16

clause negates the legal introduction of parole evidence; it is a provision in a contract to the effect that the written terms may not be varied by prior or oral agreements because all such agreements have been merged into the written document. Louisiana contract law explains that integration clauses must be given effect where the contract properly reflects the parties' intentions" and parole evidence must be excluded in such cases." *Bus. First Bank v. Eagle Marine Towing, Inc*., 2009 WL 2886383, at *4 (W.D. La. 2009) (quoting *Condrey v. SunTrust Bank of Georgia* 429 F.3d 556, 564 (5th Cir.2005) (citing Black's Law Dictionary 683 (6th ed.1983)).

Moreover, the Sales Agreement provided that CMH agreed to be responsible for "Deliver, set up, Install AC, Install skirting and build 1 wood deck step." *R. 10-3, p. 4, "Seller Responsibilities."* These responsibilities were performed through independent contractors. *R. 10-2, ¶ 17; 10-4, ¶ 9*. The Louisiana Defendants confirmed that if the Plaintiffs reported problems with their home to CMH, CMH reported the problems to the appropriate third party—the installer, manufacturer or contractor— for investigation and possible repair. *R. 10-2, ¶ 15; 10-4, ¶ 7; 10-5, ¶ 8.*

HomeFirst further asserts that Plaintiffs' petition and declarations make no mention, nor provide any supporting facts concerning the Louisiana Defendants' personal duties owed to Plaintiffs. They do not allege or declare that the Louisiana Defendants' employer, CMH, delegated any duties to them. Instead, as this Court

17

has previously addressed and rejected, Plaintiffs contend, at least for some purposes,[6] that the Louisiana Defendants formed a "joint venture" and were the actual owners of the manufactured home business.

Finally, HomeFirst argues that Plaintiffs' petition contains merely conclusory allegations of knowledge and verbal promises, assurances and intentional misrepresentations concerning the quality, workmanship and repair of the manufactured home by the Louisiana Defendants. The Court agrees. For example, Plaintiffs allege the Louisiana Defendants: "refused and/or failed to correct problems" *R. 1-3, ¶15*; "knew of the redhibitory vices and defects" *Id. at ¶ 16*; "are bad faith sellers" *Id. at ¶ 17*; "attempted to correct the problems but were unsuccessful" *Id. at ¶ 21*; "intentionally misrepresented the quality, workmanship and warranties"; *Id. at 22*.[7] Because plaintiffs do "not offer any facts in [their] original petition or [declarations] to support the conclusion that" the Louisiana Defendants would be personally liable, they have "not shown a valid reason to join [the Louisiana Defendants] in this action." *Landry v. Circle K Stores, Inc.*, 2017 WL 3065105, at *2 (E.D. La. 2017).

---

[6] Plaintiffs do not argue in their motion nor make any statement in their declarations that the Louisiana Defendants formed a joint venture.

[7] Plaintiffs cite *Thomas v. Wal-Mart Louisiana, LLC*, 2011 WL 3418322, at *3 (W.D. La. 2011) in support of their allegations that the Louisiana Defendants knew of the manufactured home defects. The Court finds that *Thomas* is distinguishable from the instant case. There, the employee-defendant "admitted that she had had knowledge of the hazard and had filed to remedy it;" whereas none of the Louisiana Defendants make any such admission. *Id.*

18

## III. CONCLUSION

For the above-assigned reasons, the Court determines that Plaintiffs improperly joined the Louisiana Defendants to defeat diversity jurisdiction. Since the Louisiana Defendants were improperly joined, the Court must dismiss them without prejudice such that complete diversity exists between the parties. Accordingly,

**IT IS RECOMMENDED** that Motion for Remand filed by Plaintiffs, Dylan Ray Breaux and Hanna Breaux, [Rec. Doc. 8], be **DENIED** and the improperly joined defendants, Patrick Kasson, Nelson Rene "Ob" Morgan and Derek Laviolette, be **DISMISSED WITHOUT PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either

the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

**THUS DONE AND SIGNED** this 22nd day of October, 2020.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE